1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MILO DANTE LEWIS,                          Case No. 2:23-cv-1010-CSK PS

12                   Plaintiff,                   ORDER GRANTING MOTION TO
                                                  REMAND, AND DENYING WITHOUT
13           v.                                   PREJUDICE MOTIONS TO DISMISS

14    BEAR STEARNS RESIDENTIAL                    (ECF Nos. 44, 50, 52, 73.)
      MORTGAGE CORP., et al.,
15
                     Defendants.
16

17          Plaintiff Milo Dante Lewis asserts claims in his Second Amended Complaint

18   ("SAC") concerning a residential mortgage against Defendants Bear Stearns Residential

19   Mortgage Corp., JP Morgan Chase Bank N.A., Community Loan Servicing LLC f/k/a

20   Bayview Loan Servicing LLC, Bayview Asset Management LLC, Nationstar Mortgage

21   LLC d/b/a Mr. Cooper, MTC Financial Inc. d/b/a Trustee Corps, Quality Loan Service

22   Corp., Federal National Mortgage Association a/k/a Fannie Mae, and Suzette Wurz.[1]

23   (ECF No. 43.) Pending before the Court are Plaintiff's motion to remand to state court

24   and motions to dismiss by JP Morgan Chase and Bear Sterns (the "Chase Defendants"),

25   Trustee Corps, and Quality Loan Service. (ECF Nos. 44, 50, 52, 73.) The Court

26   **GRANTS** Plaintiff's motion to remand. Because the Court lacks jurisdiction, the Court

27   _____

28   [1]   This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) on the
     consent of all parties. (ECF No. 84.)

1  **DENIES WITHOUT PREJUDICE** the motions to dismiss by the Chase Defendants,

2  Trustee Corps, and Quality Loan.

3  **I.      BACKGROUND**

4          **A.      Factual Background**

5          On September 21, 2000, Defendant Suzette Wurz obtained a mortgage to

6  purchase a residence on Greenwillow Way in Tracy, California. (SAC at 4, 9.) Wurz

7  owned the property as a joint tenant along with her mother and another person, Antoine

8  Murphy. (SAC at 9.) In 2004, Murphy transferred his interest in the property to Wurz and

9  her mother, then purchased his own house. (SAC at 10.) Wurz and Murphy married in

10  August 2007, and remained married until their divorce in 2020. (SAC at 20 and Exh. E.)

11  On October 11, 2007, Wurz and her mother refinanced the mortgage with Defendant

12  Bear Stearns for $417,000, secured by a deed of trust on the property. (SAC at 10; ECF

13  No. 51 (Chase Req. for Judicial Not. ("RJN")) at Exh. 1.) Therein, Wurz represented

14  herself as unmarried. (*See id.*) In January 2016, Wurz's mother died, leaving Wurz as

15  the sole deed holder and mortgagor. (SAC at 11-12.)

16          On August 15, 2016, Defendant Chase (who had acquired Bear Stearns in 2008)

17  was assigned the lender's interest in the property. (SAC at 11; Chase RJN at Exhs. 2

18  and 3.) On July 11, 2017, Chase assigned its interest in the property to Defendant

19  Community Loan Servicing d/b/a/ Bayview Loan Servicing. (SAC at 12; Chase RJN at

20  Exh. 4.) On August 24, 2017, Bayview notified Wurz she was in default, owing

21  $27,273.20 on the mortgage. (SAC at 12.) In early December 2017, Wurz agreed to a

22  loan modification with Bayview. (SAC at 13.)

23          "On or around March 2017, Plaintiff was introduced to the [] property" by Wurz's

24  tenant for the property. (SAC at 11.) Sometime in mid-2018, Plaintiff started making

25  repairs on the property.[2] (SAC at 15.) On August 24, 2018, Wurz assigned her interest in

26  the property to Plaintiff by quitclaim deed. (SAC at 11, 14, 15, and Exh. A.) Wurz "agreed

27  ────────────────

28  [2] The SAC does not allege Plaintiff was living at the property when he began making repairs. (*See* SAC.)

to carry the financing," while Plaintiff "agreed to pay the payments on that carried financing." (SAC at 14-15.) Wurz informed Bayview of this arrangement, authorizing Plaintiff to make payments on the mortgage directly to Bayview. (SAC at 15.) In January 2019, Wurz requested that Plaintiff update the mailing address with Bayview for the property so that all correspondence concerning the property would be delivered to Plaintiff (and not to Wurz's address). (SAC at 15 and Exh. F.) Between September 2018 and August 2019, Bayview accepted monthly payments on the mortgage over the phone directly from Plaintiff.[3] (SAC at 15; *see also id*. at 18 (noting monthly payments).) However, Bayview stated that, "for reasons unrelated to Plaintiff, a loan assumption was something that could not be considered at that time." (SAC at 15.)

"On or about September 2019, [Bayview] intentionally interfered with Plaintiff's right to make the payments on the [mortgage] by refusing to accept his payments," despite Plaintiff's stated intent to continue paying on the mortgage. (SAC at 17.) Bayview led Plaintiff to believe it did so at Wurz's direction. (*Id*.) On September 6, 2019, Bayview sent Wurz a copy of the 2007 deed and 2018 quitclaim deed in order to discuss the transfer of the property and Wurz's divorce. (*Id*.) Sometime thereafter, Wurz told Bayview in an email that Plaintiff was still authorized to make payments. (SAC at 18.) Bayview responded that Plaintiff would no longer have access to Wurz's information, but that "anyone" could make a payment.[4] (*Id*.) However, Wurz told Plaintiff in a September 30, 2019 email that, "'[a]cording to Bayview [],' Plaintiff purportedly did not 'purchase / secure a loan to complete' his agreement with [Wurz]." (*Id*.) The SAC alleges this "information was false," but Wurz maintained that based on Bayview's statement, she "was arbitrarily and immediately instituting a self-imposed 45-day acceleration for Plaintiff to 'secure [a] loan or monies' or else she would 'take further steps with Bayview

[3] The SAC does not allege the amount of these payments. (*See* SAC.) Drawing reasonable inferences in Plaintiff's favor as required, the Court presumes Plaintiff made monthly payments to Bayview between September 2018 and August 2019 for the total amount due each month.

[4] The SAC does not list dates for these emails. (*See* SAC.)

to relieve [her] financial responsibilities." (*Id.*) Wurz and Plaintiff continued discussing the matter over the next month, where Wurz continued attributing Plaintiff's inability to make payments directly to Bayview to "what Bayview said to her." (*Id.*)

On November 8, 2019, Wurz informed Plaintiff by email that she "chose to distance herself from any future interactions with Plaintiff" because Bayview led her to believe Plaintiff "failed to uphold his commitment by discontinuing payments after September 2019." (*Id.*)

On January 6, 2020, a Bayview agent signed a declaration indicating Bayview had attempted to contact Wurz pursuant to its duties under Cal. Civ. Code § 2923.55 (requiring a mortgage servicer to, among other things, contact the borrower to assess their financial situation and explore options to avoid foreclosure), but more than 30 days had passed without a response from Wurz. (SAC at 19 and Exh. G.) However, no further foreclosure proceedings were instituted due to the March 2020 COVID-19 foreclosure moratorium, and because of this, Bayview informed Plaintiff that his request for resolution of the matter was on hold indefinitely. (SAC at 19-20.)

On September 20, 2021, Bayview recorded a substitution of trustee showing Trustee Corps was substituted as the foreclosure trustee on March 11, 2020. (SAC at 21 and Exh. H.) The next day, Trustee Corps recorded a notice of default and election to sell, alleging an arrearage of $52,391.65. (SAC at 22; Chase RJN at Exh. 7.) Plaintiff alleges Trustee Corps acted outside of its authority in doing so. (SAC at 22-23.)

On October 4, 2021, Plaintiff contacted Bayview (at that time d/b/a Community Loan Servicing (*see* SAC at 20)) to seek resolution of the matter, informing them he had recently paid the property taxes for the property and intended to keep the property. (SAC at 23-24.) Community responded by letter on November 17, 2021, acknowledging "that a possible transfer of ownership has occurred" and construing Plaintiff's request as a request for Plaintiff to be deemed "a possible successor in interest." (SAC at 24 and Exh. I.) Community stated that if Plaintiff did not qualify as a successor in interest, he "will need to assume the loan in order to access loan account information." (*Id.*) Community

stated it could "provide a loan assumption package at any time," but would send one if the "review process is unable to confirm [Plaintiff] as the Successor in Interest to the original borrower." (*Id.*) Noting Community's assertion that a "possible" ownership change occurred, Plaintiff filed an action in state court on November 20, 2021. (SAC at 24 and Exh. J.) This action was later dismissed by agreement of the parties. (*See Lewis v. Bear Stearns Residential Mortgage Corporation et al.*, No. 2:22-cv-0241-TLN-CKD (E.D. Cal., filed Apr. 8, 2022) at ECF No. 9.)

On December 22, 2021, Trustee Corps filed a notice of trustee sale set for January 24, 2022. (ECF No. 53 (Trustee Corps RJN) at Exh. 6.) On January 5, 2022, Community Loan Servicing provided Plaintiff with a blank loan assumption package. (SAC at 25.) Community informed Plaintiff he would be required to tender $67,676.78 toward Wurz's mortgage in exchange for a right to assume the mortgage. (SAC at 25-26 and Exh. K.) On January 11, 2022, Plaintiff mailed a cashier's check for $67,700 to Trustee Corps. (SAC at Exh. K at 2 (copy of US Bank cashier's check No. 3871515480, dated January 11, 2022 for $67,700.00 to Trustee Corps, with memo note "1471 Greenwillow Way, Tracy, CA 95376 Reinstatement").) On January 31, 2022, Trustee Corps rescinded the notice of default and election to sell.[5]

On January 13, 2022— a few weeks before Trustee Corps rescinded the notices— Plaintiff submitted a completed loan assumption package to Community, who acknowledged receipt and indicated time was needed to approve the assumption package. (SAC at 26; *see also* ECF No. 1 (Chase Not. Removal) at 68-76 (Pl's Mortgage Assumption Package);[6] Chase RJN at Exh. 8.) However, Community failed to process the assumption package before being acquired by Nationstar Mortgage LLC in spring

---

[5] Given Plaintiff's mailing of the $67,700 cashier's check and Trustee Corps' rescission of the notices, the Court infers Community accepted Plaintiff's $67,700 cashier's check.

[6]   The SAC also references an Exhibit L as evidence of Community Loan Servicing's response to Plaintiff's January 13, 2022 submission. However, Exhibit L is a February 15, 2022 letter from Community concerning the termination of private mortgage insurance on the property.

1  2022. (SAC at 27.)

2          On July 8, 2022, Community assigned its interests in the property to Nationstar.

3  (SAC at 27; Chase RJN at Exh. 5.)

4          On November 3, 2022, Quality Loan Service Corp. was substituted as the

5  foreclosure trustee for Nationstar. (SAC at 27; Chase RJN at Exh. 10.) On November 15,

6  2022, Quality Loan filed a notice of default and election to sell, noting an arrearage of

7  $26,111.85 running from February 1, 2022. (SAC at 27; Chase RJN at Exh. 11.) The

8  notice indicates Nationstar attempted to explore options with the borrower (Wurz) to

9  avoid foreclosure, per Cal. Civ. Code § 2923.55, to no avail. (*See id.*)

10          Over the next two months, Nationstar sent Plaintiff the following correspondence,

11  sometimes contradicting itself:

12  -    In November 2022, Nationstar and Quality Loan informed Plaintiff they knew of

13       his ownership interest "but that he could not reinstate the loan purportedly

14       because his property was in California."

15  -    On December 8, 2022, Nationstar wrote Plaintiff, informing him it could not

16       establish Plaintiff's interest in the property.

17  -    In December 2022, Nationstar informed Plaintiff that, based on their records,

18       they believed that Wurz's mother was the "living" borrower despite her passing

19       away approximately seven years earlier and despite documents showing Wurz

20       was the living borrower.

21  -    In January 2023, Nationstar "informed Plaintiff they failed to identify the

22       $67,700 payment made to Community in January 2022,[7] failed to identify the

23       loan assumption agreement Plaintiff made with Community in exchange for

24       that $67,700, and failed to identify the assumption package Plaintiff submitted

25       to Community."

26  (SAC at 28.) On March 8, 2023, Nationstar confirmed Plaintiff as a successor in interest

27  _____

28  [7] The Court infers Community accepted the $67,700, given that Trustee Corps rescinded
   the notice of default and election to sell on January 31, 2023. (Chase RJN at Exh. 8.)

6

1    to Wurz. (SAC at 29.) On March 11, 2023, Plaintiff requested clarification of Nationstar's

2    confirmation, as Plaintiff never represented that he was related to Wurz and had not

3    requested consideration as a successor in interest. (*Id.*)

4           In May 2023, Quality Loan filed a notice of trustee's sale, which has been stayed

5    by agreement of the parties. (Chase RJN at Exh. 12; ECF Nos. 76, 85, 88, 89.)

6           **B.      Procedural Background**

7           On January 30, 2023, Plaintiff filed a complaint in state court against Wurz,

8    asserting claims for breach of contract and implied covenant, negligent

9    misrepresentation, fraud, civil conspiracy, and emotional distress. (SAC at 29; *see also*

10   *Lewis v. Wurz*, No. STK-CV-URP-2023-728 (San Joaquin Superior Court, Jan. 30,

11   2023).) This case is currently in the discovery phase. (SAC at 30.)

12          On February 8, 2023, Plaintiff filed a second lawsuit in state court, and amended

13   this complaint on March 27, 2023. (*See* Chase Not. Removal at 10-95, 104-192.) The

14   First Amended Complaint named as Defendants Bear Stearns, Chase, Community Loan

15   Servicing f/k/a Bayview Loan Servicing, Nationstar d/b/a Mr. Cooper, and MTC Financial

16   Inc. d/b/a Trustee Corps. (*See id.* at 104.) MTC filed a declaration of nonmonetary

17   status, asserting it only acted as trustee in the 2019-2022 foreclosure proceedings. (*Id.*

18   at 199-201.) Plaintiff objected to this declaration. (*Id.* at 203-06.) The Chase Defendants

19   removed this lawsuit to this federal district court on both federal question and diversity

20   jurisdiction grounds. (*See id.* at 1.) Trustee Corps and the Chase Defendants then

21   moved to dismiss all claims against them. (ECF Nos. 9, 17.)

22          On June 22, 2023, Plaintiff filed a motion to remand, arguing in part that he did

23   not intend to assert any federal claims and arguing a lack of complete diversity because

24   both he and Trustee Corps were California citizens. (ECF No. 24.) Chase opposed

25   remand, arguing in part that the Court should disregard Trustee Corps's citizenship given

26   its nominal status as trustee, and should otherwise find complete diversity. (ECF No. 32.)

27   After holding a hearing, the Court denied Plaintiff's motion to remand without prejudice.

28   (8/9/2023 Order (ECF No. 39).) In doing so, the Court rejected Plaintiff's arguments

1   regarding removal defects. (*Id.* at 2-3.) The Court also held that it had subject matter

2   jurisdiction based on diversity jurisdiction, as well as federal question jurisdiction over the

3   Federal Debt Collection Practices Act claim and supplemental jurisdiction over the

4   remaining claims. (*Id.* at 4-6.) However, the Court granted Plaintiff leave to amend,

5   noting he could excise any federal claims if he wished, could clarify his allegations

6   against Trustee Corps, and could add other parties who are California residents so long

7   as Plaintiff had a factual basis to do so. (*Id.* at 6-7.) A schedule was set for Plaintiff to file

8   another motion to remand if he wished, as well as for Defendants to either oppose

9   remand or file a statement of non-opposition. (*Id.* at 7.) Given Plaintiff's leave to amend,

10  the Court denied the pending motions to dismiss without prejudice. (*See id.*) Plaintiff filed

11  a motion to reconsider this order, which was denied. (ECF Nos. 40, 41.)

12         On September 11, 2023, Plaintiff filed a Second Amended Complaint, which

13  names the previous Defendants and multiple Doe defendants, as well as new

14  Defendants Bayview Asset Management (a member of Bayview LLC, now Community

15  Loan Servicing), Quality Loan, Fannie Mae, and Suzette Wurz. (ECF No. 43.) The SAC

16  lists the following as Plaintiff's claims:

17      I.    Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code
18            § 1788, vs. Bear Stearns, Chase, Community/Bayview, Nationstar/Cooper, Trustee Corps, Quality Loan, and Fannie Mae;

19      II.    Concealment, vs. Chase, Community/Bayview, Trustee Corps, Fannie Mae, and Wurz;

20

21      III.    Negligence, vs. Chase, Community/Bayview, Nationstar/Cooper, Trustee Corps, and Fannie Mae;

22      IV.    Cancellation of Written Instruments, vs. Bear Stearns, Chase,
23            Community/Bayview, Nationstar/Cooper, Quality Loan, and Fannie Mae;

24      V.    Cal. Bus. Code § 17200 ("UCL"), vs. Chase, Community/Bayview, Nationstar/Cooper, Trustee Corps, Quality Loan, and Fannie Mae;

25

26      VI.    Intentional Infliction of Emotional Distress, vs. Community/Bayview, Nationstar/Cooper, Trustee Corps, Fannie Mae, and Wurz;

27      VII.    Injunctive Relief, vs. Chase, Community/Bayview, Nationstar/Cooper, Quality Loan, and Fannie Mae;

28

VIII.  "Breach," vs. Community/Bayview, Nationstar/Cooper, and Fannie Mae;

IX.  Negligent Misrepresentation, vs. Community/Bayview, Nationstar/Cooper, and Fannie Mae;

X.  Civil Conspiracy, vs. Community/Bayview, Trustee Corps, Fannie Mae, and Wurz;

XI.  "Intentional Interference," vs. Community/Bayview and Fannie Mae;

XII.  Conversion, vs. Community/Bayview, Nationstar/Cooper, Trustee Corps, and Fannie Mae;

XIII.  Slander of Title, vs. Community/Bayview, Nationstar/Cooper, Trustee Corps, and Quality Loan; and

XIV.  Defamation, Libel, and Slander, vs. Wurz.

(SAC at 32-56.) Plaintiff prays for injunctive relief; a voiding of the 2007 Promissory Note and Deed of Trust on the Property; Cancellation and Recission of the November 15, 2022 Notice of Default; monetary damages; and other relief. (*Id.* at 56.)

Plaintiff simultaneously moved to remand, which the Chase Defendants oppose. (ECF Nos. 44, 49, 55.) Motions to dismiss the SAC were filed by the Chase Defendants, Trustee Corps and Quality Loan (ECF Nos. 50-53, 73), and Wurz filed an answer to the SAC (ECF No. 57). The Court granted an extension of time for Community/Bayview, Nationstar/Cooper, and Fannie Mae to respond to the SAC, to either October 10, 2024 or within 21 days of the Court's order on the pending motions (and any related proceedings). (ECF Nos. 88, 89.) The parties also agreed to postpone the foreclosure sale. (*See id.*)

## II.  DISCUSSION

### A.  Pending Motions

In Plaintiff's motion to remand, he argues that the SAC contains no federal claims and must be remanded for lack of complete diversity between Plaintiff and Defendants Trustee Corps, Quality Loan, and Wurz.[8] (ECF No. 44.) Plaintiff contends Wurz is the

---

[8]  The dispute over the Court's subject matter jurisdiction concerns three distinct categories of Defendants: (1) Wurz; (2) foreclosure trustees Quality Loan and Trustee

9

"quintessential-archetypal required party" for purposes of the Federal Rules of Civil Procedure, and the factors under 28 U.S.C. § 1447(e) support her joinder to this action. (*See* ECF No. 55.) Plaintiff also argues that the allegations in the SAC against Trustee Corps and Quality Loan are sufficient to demonstrate these entities are more than nominal parties. (*Id.*) The Chase Defendants oppose remand, arguing Wurz was added solely to destroy diversity, and so the Court should exercise its discretion to deny joinder under 28 U.S.C. § 1447(e). (ECF No. 49.) Further, the Chase Defendants argue the citizenship of Trustee Corps and Quality Loan should be disregarded, as they are nominal parties, and complete diversity otherwise exists. (*Id.*) Plaintiff also filed a supplemental declaration concerning his allegations against Trustee. (ECF No. 81.) Trustee Corps responded to this supplement and Plaintiff replied. (ECF Nos. 82, 83.)

Separately, the Chase Defendants move to dismiss and request judicial notice of multiple mortgage documents. (ECF Nos. 50-51.) The Chase Defendants argue: (1) the SAC violates Rule 8's requirement of a short and plain statement; (2) the claims in the SAC against the Chase Defendants (claims I-V and VII, as well as the punitive damages request) are barred by the statute of limitations; and (3) the SAC fails to state sufficient facts to support these claims. Trustee Corps and Quality Loan also move to dismiss, and each party requests judicial notice of multiple mortgage documents. (ECF Nos. 52, 53, 73.) Trustee Corps and Quality Loan argue: (1) their "foreclosure trustee" status bars suit against them; and (2) Plaintiff fails to state sufficient facts to support the claims against them. Plaintiff opposes both motions to dismiss, primarily on the grounds that the Court lacks subject matter jurisdiction. (ECF Nos. 58, 75.) He also requests judicial notice of Defendant Wurz's answer in this case, arguing Wurz is a required party. (ECF No. 60.) The Chase Defendants filed a reply brief that the Trustee Corps joined, and to which Plaintiff objects. (ECF No. 62, 67, 68.)

---

Corps; and (3) the remaining Defendants. Because the determination of Wurz is dispositive and requires remand, the Court does not reach the other categories of Defendants or other issues raised in the motion to remand.

For purposes of this order, the matters surrounding Wurz are dispositive and require remand. The Court therefore does not reach the other issues raised in Plaintiff's motion to remand or Defendants' motions to dismiss.

**B.      Legal Standards**

Federal courts have subject matter jurisdiction over civil actions arising under federal law as well as those between citizens of different states in which the alleged damages exceed $75,000. 28 U.S.C. §§ 1331, 1332. A case removed from state court may be remanded back to state court at any time before final judgment if the federal court finds that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). If after removal a plaintiff seeks to join a non-diverse defendant, "the court may deny joinder, or permit joinder and remand the action to the [s]tate court." 28 U.S.C. § 1447(e).[9]

In construing the pleadings, factual allegations set forth in the complaint are construed as true and in a light most favorable to the plaintiff. *See Wolff-Bolton v. Manor Care-Tice Valley CA, LLC*, 2017 WL 2887857, at *6 (N.D. Cal. July 7, 2017); *see also Casola v. Dexcom, Inc.*, 98 F.4th 947, 954 (9th Cir. 2024) (reminding that doubts about the right of removal requires resolution in favor of remand, and the burden is on the removing party to establish proper removal). The Court also liberally construes pleadings from parties proceeding without the aid of counsel. *Hebbe v. Pliler*, 627 F.3d 338, 342 n.7 (9th Cir. 2010). However, the Court will not rely on facts contradicted by documents in the record or legal conclusions. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

Additionally, the Court may consider undisputed facts contained in judicially noticeable documents. Fed. R. Evid. 201; *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (approving court's reliance on documents attached to or incorporated

---

[9] In their briefing, the Chase Defendants incorrectly refer to the fraudulent joinder doctrine. (*See* ECF No. 49 at 8, 15.) After an action has already been removed, 28 U.S.C. § 1447(e) applies, not the fraudulent joinder doctrine. *See Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt., LLC*, 2014 WL 807413, at *3 (E.D. Cal. Feb. 28, 2014).

into the complaint and matters of judicial notice). This includes certain undisputed facts from the parties' exhibits, such as recorded notices related to the loan, deed of trust, and foreclosure proceedings. *See Gamboa v. Tr. Corps*, 2009 WL 656285, at *3 (N.D. Cal. Mar. 12, 2009) (taking judicial notice of recorded documents related to a foreclosure sale, including grant deed and deed of trust, as they were referenced throughout the complaint as well as "part of the public record and [] easily verifiable").

### C.    Joinder of Wurz as a Defendant Under 28 U.S.C. § 1447(e)

In the SAC, Plaintiff names Wurz as a Defendant, and alleges that both he and Wurz are California citizens. (*See* SAC at 6, 8.) Given that Wurz's continued presence would destroy diversity, the Court must first decide whether to permit joinder of Wurz under § 1447(e) before turning to whether this case should be remanded.

In exercising § 1447(e) discretion, courts balance whether:  (1) the claim against the new party appears to be valid; (2) the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (3) the statute of limitations would prevent the filing of a new action against the new defendant should the court deny joinder; (4) there has been unexplained delay in seeking the joinder; (5) the joinder is solely for the purpose of defeating federal jurisdiction; and (6) the possible prejudice that may result from joinder to any of the parties in the litigation. *Baker v. Nutrien Ag Solutions, Inc.*, 2022 WL 3142065, at *4 (E.D. Cal. Aug. 5, 2022) (*citing Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1278 (C.D. Cal. 2015) and *Graunstadt v. USS-Posco Indus.*, 2010 WL 3910145, at *2 (N.D. Cal. Oct. 5, 2010)). "Any of the factors might prove decisive, and none is an absolutely necessary condition for joinder." *Harris v. Dias*, 2014 WL 4063161, at *2 (S.D. Cal. Aug. 14, 2014). This discretionary authority exists even if the plaintiff has already filed an amended complaint naming the non-diverse party. *Baker*, 2022 WL 3142065 at *4 (dismissing without prejudice claims in already-filed amended complaint against non-diverse defendant under § 1447(e) authority) (citations omitted).

///

As described below, the Court concludes Wurz is properly joined as a defendant given:  (1) the facial validity of the civil conspiracy claim against Wurz; (2) the need for Wurz's presence for the just adjudication of this claim; (4) the early stage of this case; (5) Plaintiff's joinder of Wurz is not solely for the purpose of destroying diversity; and (6) the prejudice Plaintiff would suffer if Wurz were not joined. Therefore, remand to state court is necessary because Wurz's joinder destroys diversity jurisdiction and no federal claims exist in the SAC to establish the federal court's subject matter jurisdiction. 28 U.S.C. § 1447(c).

1.    <u>The civil conspiracy claim against Wurz appears facially valid.</u>

For the validity factor, courts need only determine whether the claim against the non-diverse defendant appears valid. *Sabag v. FCA US, LLC*, 2016 WL 6581154, at *6 (C.D. Cal. Nov. 7, 2016). Critically, this standard is not the same as the standard in either a motion to dismiss or a motion for summary judgment. *Id.* (*quoting Freeman v. Cardinal Health Pharm. Servs., LLC*, 2015 WL 2006183, at *3 (E.D. Cal. 2015)). Instead, courts look at whether the pleadings state a "facially legitimate claim" against the non-diverse defendant. *Sabag*, 2016 WL 6581154, at *6 (*quoting Taylor v. Honeywell Corp.*, 2010 WL 1881459, at *3 (N.D. Cal. May 10, 2010)). For example, in *Harris*, the plaintiff sought to add a negligence claim against a non-diverse defendant after discovering that party may have conspired to misrepresent another defendant's financial information, all to maximize the commission that could have been earned by defendants. 2014 WL 4063161, at *2. The court did not evaluate the sufficiency of the allegations, and instead noted the less restrictive standard under § 1447(e) and concluded that the claim was valid. *Id.*

Here, the SAC lists four sets of claims against Wurz:  concealment, intentional infliction of emotional distress, civil conspiracy, and defamation/libel/slander. (SAC at 32-56.) The Court focuses on Plaintiff's civil conspiracy claim against Wurz because it appears facially valid. *See Taylor,* 2010 WL 1881459, at *3-4 (resolving § 1447(e) validity of the claims factor by focusing on just one of the claims asserted, as that claim

1   appeared facially legitimate and therefore supported joinder of the non-diverse

2   defendant).

3         In California, civil conspiracy is a legal doctrine that imposes liability on persons

4   who, "although not actually committing a tort themselves, share with the immediate

5   tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton*

6   *Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994). The elements of a claim for civil

7   conspiracy are:  (a) the formation and operation of the conspiracy, (b) wrongful conduct

8   in furtherance of the conspiracy, and (c) damages arising from the wrongful conduct.

9   *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995).

10                 a.     *The Formation and Operation of the Conspiracy*

11         Regarding formation and operation of the conspiracy, the SAC alleges Wurz

12   conspired with Bayview to deprive Plaintiff of his right to make payments directly to

13   Bayview, which resulted in the mortgage going into default. (SAC at 30.) In support of

14   this allegation, the SAC states that when Wurz quitclaimed her interest in the property to

15   Plaintiff on August 24, 2018, Wurz and Plaintiff agreed Wurz would remain the mortgage

16   holder and Plaintiff would make all payments directly to Bayview. (SAC at 11, 14, 15 and

17   Exh. A.)  Between September 2018 and August 2019, this is what happened, as

18   Bayview accepted monthly payments on the mortgage over the phone directly from

19   Plaintiff. (*Id.* at 15; *see also* SAC at 18.) However, in September 2019, Bayview told

20   Plaintiff he could no longer make direct payments on the mortgage. (*Id.*) The SAC

21   alleges Bayview stopped accepting Plaintiff's mortgage payments because this is what

22   Wurz and Bayview agreed to in their September 6, 2019 conversation. (SAC at 17.)

23   Then, over the next few months, the SAC alleges Wurz and Bayview gave effect to this

24   agreement by feeding Plaintiff contrary information regarding his ability to pay. (*See* SAC

25   at 30.) This includes: (i) Wurz's post-September 6, 2019 email authorizing Plaintiff to

26   make payments; (ii) Bayview 's response that Plaintiff would no longer have access to

27   Wurz's information, but that "anyone" could make a payment; (iii) Wurz's September 30,

28   2019 email to Plaintiff stating Bayview was still blocking Plaintiff's direct payments

because Plaintiff purportedly did not "purchase/secure a loan to complete his agreement with [Wurz]"; (iv) Wurz's insistence throughout October 2019 that Plaintiff's inability to pay Bayview was because of "what Bayview said to her"; and (v) Wurz's November 8, 2019 email informing Plaintiff that she "chose to distance" herself from any future interactions with Plaintiff" because Bayview led her to believe Plaintiff "failed to uphold his commitment by discontinuing payments after September 2019." (SAC at 18.)

These facts indicate that by September 2019, Wurz wished to sever her ties with Plaintiff and relieve herself of her responsibilities under the mortgage. However, she did not want to tell Plaintiff this was her objective, so she simply blamed Bayview for Plaintiff's inability to pay. A delay in payments would result in the mortgage going into default, which would lead to Wurz being relieved of her responsibilities under the mortgage in one of multiple ways. For example, a default and notice of election to sell might: (i) pressure Plaintiff to submit a mortgage assumption package to Bayview; (ii) pressure Plaintiff to obtain his own mortgage with another lender, who would then pay off Wurz's mortgage with Bayview; or (iii) resolve the parties' rights at a trustee sale, where Plaintiff, Bayview, or some other buyer would become the mortgage holder—not Wurz. Given the lower threshold for the "validity of the claims" factor under § 1447(e), these allegations facially support Plaintiff's contention that Bayview and Wurz entered into an agreement in September 2019 to block Plaintiff's ability to directly pay on the mortgage, as well as the contention that Bayview and Wurz acted on that agreement from September 2019 onward by feeding Plaintiff misinformation. *See Sabag*, 2016 WL 6581154, at *6; *Harris*, 2014 WL 4063161, at *2.

Courts have found similar allegations to establish a civil conspiracy claim under Rule 12(b)(6)'s higher "sufficiency of the pleadings" standard. *See, e.g., Freeney v. Bank of America Corp.*, 2015 WL 12535021, at *32 (C.D. Cal. Nov. 19, 2015) (finding sufficient facts to meet higher Rule 12(b)(6) standard on civil conspiracy claim where complaint alleged defendants agreed to make misrepresentations and false promises to the plaintiff, inferring the co-conspirators' agreement from both the defendants' close

1    relationship and the inexplicable nature of the misrepresentations, causing damages);

2    *Navarrete v. Meyer*, 237 Cal. App. 4th 1276, 1292, as modified (July 22, 2015); *Wyatt v.*

3    *Union Mortgage Co.*, 24 Cal. 3d 773, 784 (1979) (reminding that tacit consent as well as

4    express approval can suffice to show agreement). In addition to the facts noted above,

5    the SAC describes Wurz's and Bayview's lender-borrower relationship and Wurz's later-

6    expressed intent to force the mortgage into default. (*See* SAC at 17-18.)

7                      b.     *Wrongful Conduct in Furtherance of the Conspiracy*

8            The Court must review the SAC to determine whether it alleges an actual tort was

9    committed by either Wurz or Bayview because the wrongful conduct in furtherance of the

10   conspiracy "must be activated by the commission of an actual tort." *Applied Equip.*, 7

11   Cal. 4th at 511. Here, the Court focuses on the negligent misrepresentation tort against

12   Bayview[10] (SAC at 47-51), because the facts surrounding the SAC's conspiracy

13   allegations are also relevant to this negligent misrepresentation claim.

14           Under California law, the elements of a negligent misrepresentation claim are:

15   (1) the defendant made a misrepresentation of material fact; (2) without reasonable

16   ground for believing it to be true; (3) with intent to induce the plaintiff's reliance on the

17   fact misrepresented; (4) the plaintiff justifiably relied on defendant's representations; and

18   (5) resulting damages to the plaintiff. *Charnay v. Cobert*, 145 Cal. App. 4th 170, 184

19   (2006). As with the civil conspiracy claim, the validity of the negligent misrepresentation

20   claim is reviewed under a lower threshold for § 1447(e) purposes. *Sabag*, 2016 WL

21   6581154, at *6. For example, in *Hamilton Condo. Ass'n, Inc. v. State Farm Gen. Ins. Co.*,

22   the court found a negligent misrepresentation claim to be facially legitimate in the

23   § 1447(e) context by simply noting allegations that the defendant made multiple

24   representations that the plaintiffs would be reimbursed under an insurance policy but

25   never were, thus damaging plaintiffs. 2020 WL 3574696, at *1, 3 (C.D. Cal. July 1,

26    

27   [10]  Plaintiff alleges the following tort claims against Bayview:  (II) concealment; (III) negligence; (VI) intentional infliction of emotional distress; (IX) negligent

28   misrepresentation; (X) civil conspiracy; (XI) intentional interference; (XII) conversion; and (XIII) slander of title. (*See* SAC at 34-55.)

1    2020); *see also Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1245-48 (E.D.

2    Cal. 2016) (finding sufficient facts to meet the higher Rule 12(b)(6) standard on negligent

3    misrepresentation claim where the complaint alleged defendant mortgage-lender

4    misinformed the borrowers about their rights; the surrounding facts indicated the lender

5    had no reasonable basis to make those statements; the lender did so allegedly to delay

6    negotiations with the borrower (which put the mortgage loan into default and increased

7    the amount of arrears, fees, and costs the lender could charge upon the borrower's cure

8    of the default); the borrowers relied on lender's representations in the hopes of avoiding

9    default and a foreclosure sale; and the borrowers were damaged by, among other

10   things, an increase in the arrears owed).

11           Here, the SAC alleges a facially valid negligent misrepresentation claim against

12   Bayview, satisfying the civil conspiracy requirement that an actual tort is alleged to have

13   been committed. The SAC alleges Bayview misrepresented a material fact when, in

14   September 2019, it informed Plaintiff it would no longer accept Plaintiff's direct payments

15   on the mortgage at Wurz's direction. (SAC at 17.) The SAC alleges Bayview had no

16   reasonable ground for believing this to be true, given that Bayview was aware of Wurz's

17   arrangement with Plaintiff, accepted monthly payments from Plaintiff in the year leading

18   up to September 2019, and was told by Wurz in September 2019 that Plaintiff was still

19   authorized to make payments. (SAC at 14-15, 18.) As for the intent to induce reliance,

20   this can be inferred from a defendant's knowledge that the plaintiff would act in reliance

21   upon the representation. *Broady v. Nw. Mut. Life Ins. Co.*, 2014 WL 12514795, at *3

22   (S.D. Cal. June 30, 2014). The SAC does so by alleging that, despite Bayview's receipt

23   of Plaintiff's monthly payments up through September 2019, and despite Plaintiff's stated

24   intent to continue paying thereafter, Bayview led Plaintiff to believe Bayview could not

25   accept further payments based on Wurz's instruction. (SAC at 17-18.) Further,

26   preventing Plaintiff from paying would drive the mortgage into default and increase the

27   fees Bayview would collect if and when the default was cured. (*See id.*) The SAC alleges

28   Plaintiff justifiably relied on Bayview's representations because Bayview was in control of

how mortgage payments could be made, and so Plaintiff believed Wurz was actually responsible for Bayview's refusal to accept payment. (SAC at 17.) Finally, the SAC alleges Plaintiff was damaged because he had to pay significantly more interest, costs, and fees in January 2022 when he tendered the $67,700 cashier's check than what he would have paid if he had not been barred from continuing his monthly mortgage payments between September 2019 and January 2022. (*See* SAC at 56 (praying for, among other things "[a]n award of actual, economic, statutory, compensatory, general, special, and punitive damages according to proof at trial"); *see id.* at Exh. K (noting arrearage included late charges, pending late charges, recoverable balance, trustee fees & costs, and attorney fees & costs).) In this way, the SAC's allegations state a facially valid negligent misrepresentation claim against Bayview. *See Hamilton Condo.,* 2020 WL 3574696, at *1. Even under a higher "sufficiency of the pleadings" standard, the SAC alleges facts that meet the elements of a negligent misrepresentation claim. *See Dougherty*, 177 F. Supp. 3d at 1245.

c.   <em>Damages arising from the wrongful conduct</em>

The SAC seeks "[a]n award of actual, economic, statutory, compensatory, general, special, and punitive damages" and emotional distress damages from Wurz and Bayview conspiring against Plaintiff from September 2019 onward. (*See* SAC at 24, 56.) In addition, when liberally construing the SAC as required, the SAC also alleges monetary damages from the additional amount Plaintiff had to pay to cure the default when Plaintiff tendered the $67,700 cashier's check in January 2022. (*Compare* SAC at Exh. K (in January 2022, $67,676.78 owed and noting arrearage included late charges, pending late charges, recoverable balance, trustee fees & costs, and attorney fees and costs), *with* SAC at 12 (in August 2017, $27,273.20 was owed on the mortgage)

The damages sought in the SAC are allowed in a civil conspiracy claim, and support the finding of a facially valid claim. *See* Cal. Civ. Code § 3333 (noting damages for the breach of an obligation not arising from contract includes "the amount which will compensate for all the detriment proximately caused thereby"); *Marron v. Superior Court,*

1   108 Cal. App. 4th 1049, 1060 (2003) ("Compensatory damages generally include

2   damages for pain and suffering caused by a defendant's breach of a noncontractual

3   obligation."); *see also Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 949 (2022)

4   (noting multiple fraud-style claims could be viable in the mortgage context, including

5   cases where borrowers suffer monetary damages from loan servicers' pursuit of fees or

6   improper incentives) (Liu, J., concurring); *Murphy*, 74 F. Supp. 3d at 1287 (under

7   California law, coconspirators "'incur liability co-equal with the immediate tortfeasors'")

8   (*quoting Applied Equip.*, 7 Cal. 4th at 511).

9                d.    *Conclusion*

10       Under the lower threshold for the "validity of the claims" factor under § 1447(e),

11   the above allegations facially support Plaintiff's civil conspiracy claim against Wurz. *See*

12   *Sabag*, 2016 WL 6581154, at *6. In addition, though the Chase Defendants oppose

13   joinder of Wurz to this action, they did not dispute the validity of either the civil

14   conspiracy or negligent misrepresentation claims. (*See* ECF No. 49 at 12-14

15   (recognizing Plaintiff's civil conspiracy claim but failing to address the validity of either it

16   or the negligent misrepresentation claim).) No other Defendant filed an opposition to

17   Plaintiff's motion to remand. (*See* Docket.) Thus, Defendants concede the facial validity

18   of these claims. *See Hamilton Condo.,* 2020 WL 3574696, at *3 (noting that though

19   defendant opposed remand by arguing one of the plaintiff's claims against the non-

20   diverse defendant was not valid, the defendant did not dispute and, thus, conceded the

21   validity of the remainder of the claims plaintiff sought to add against the non-diverse

22   defendant).  The Court finds the validity factor weighs in favor of joining Wurz to this

23   action. *See id.*

24              2.      <u>Wurz's presence is necessary for just adjudication under Rule 19.</u>

25       Under the second § 1447(e) factor, courts consider whether the party sought to

26   be joined is needed for just adjudication and would be joined under Federal Rule of Civil

27   Procedure 19(a). *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de*

28   *CV*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000). Rule 19 requires joinder of persons

whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests or would subject any of the parties to the danger of inconsistent obligations. *Id.*; *Chan v. Bucephalus Alt. Energy Grp., LLC*, 2009 WL 1108744, at *3 (N.D. Cal. Apr. 24, 2009). For this factor, courts focus on whether a failure to join a party would lead to "separate and redundant actions" and whether the non-diverse defendants are only "tangentially related" to the cause of action. *See Sabag*, 2016 WL 6581154, at *4 (*quoting IBC Aviation*, 125 F. Supp. 2d at 1011-12).

Here, Wurz should be joined as a Defendant because her absence would preclude the granting of complete relief to Plaintiff on a subset of his claims. As noted above, the SAC presents a facially viable claim for civil conspiracy against Wurz. Civil conspiracy is, by its nature, a doctrine that imposes liability on co-conspirators. *Applied Equip.*, 7 Cal. 4th at 510-11. Given this, Wurz and Bayview are not simply tangentially related to the civil conspiracy claim. *See IBC Aviation,* 125 F. Supp. 2d at 1011. Instead, Wurz's actions are inextricably intertwined with Bayview's alleged misrepresentations in September 2019. *See Sabag*, 2016 WL 6581154, at *4 (finding claims against non-diverse party to be directly related to claims against other defendants for purposes of  §1447(e), where the non-diverse defendant was, "allegedly a direct participant in the conduct [giving] rise to plaintiff's existing claims . . . ," and where such claims would be based on the same documents, witnesses, and other factual contentions). In addition, separating the conspiracy claim against Wurz from the negligent misrepresentation claim against Bayview would lead to redundant actions and inefficient use of judicial resources. *See id.*; *see also Encino Petroleum, Inc. v. Allied Prop. & Cas. Ins. Co.*, 2012 WL 1289850, at *2 (C.D. Cal. Apr. 16, 2012) (finding "the efficiency of avoiding multiple court actions based on the same occurrences weighs strongly in favor of joinder").

Further, there is a danger that Plaintiff could not obtain complete relief against Wurz if she is not joined. For the same reason, there is also a risk that this federal court and the state court could subject the parties to inconsistent obligations if Wurz was not joined, and the cases were permitted to proceed in both federal and state courts. *See*

1    *IBC Aviation,* 125 F. Supp. 2d at 1011; *Chan*, 2009 WL 1108744, at \*3.

2            Thus, the Court finds this second factor weighs in favor of allowing Wurz to be

3    joined to this action.

4                    3.    No statute of limitations bar exists if Wurz were not joined.

5            When a claim is timely filed in state court and then removed, joinder and remand

6    may be warranted if the statute of limitations would preclude the filing of a new, separate

7    action against the party whose joinder has been denied in the federal proceeding.

8    *Murphy*, 74 F. Supp. 3d at 1284.

9            Here, this factor weighs against permitting joinder because there is no statute of

10   limitations issue. Plaintiff filed claims against Wurz in state court one week before filing

11   this underlying case. (*See Lewis v. Wurz*, STK-CV-URP-2023-728, San Joaquin

12   Superior Court; SAC at 30 (noting the state court case against Wurz is currently in the

13   discovery phase).) Thus, this factor weighs against joining Wurz to this action. *Baker*,

14   2022 WL 3142065, at \*4.

15                   4.    Plaintiff's delay in joining Wurz does not weigh against joinder.

16           Under the fourth factor, courts consider whether the attempt to join a nondiverse

17   defendant was made in a timely fashion. *Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1083

18   (C.D. Cal. 1999). Courts often look to the procedural stage of the case, *Lara v. Bandit*

19   *Industries, Inc.*, 2013 WL 1155523, at \*3 (E.D. Cal. Mar. 19, 2013), and whether the

20   party seeking joinder "knew or should have known the facts and theories raised by the

21   amendment in the original pleading." *Baker*, 2022 WL 3142065, at \*5 (*quoting*

22   *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006)).

23           Here, this case has not moved beyond the pleadings stage, and only six months

24   had passed between the filing of this case in state court and when Plaintiff sought to add

25   Wurz. On January 30, 2023, Plaintiff filed an action in state court against Wurz. (*See*

26   SAC at 29.) Nine days later, Plaintiff filed a second action in state court against Bear

27   Stearns, Community Loan Servicing f/k/a Bayview Loan Servicing, and Nationstar

28   Mortgage d/b/a Mr. Cooper—but did not name Wurz as a Defendant. (*See* Chase Not.

Removal at 10-91.) Plaintiff amended the complaint, adding Defendant Chase and others (but not Wurz). (*See id.* at 104-192.) Chase then removed this second action to federal court on May 30, 2023 on both federal question and diversity jurisdiction grounds. (*See id.* at 1.) On June 22, 2023, Plaintiff moved to remand the case back to state court. (ECF No. 24.) Plaintiff explicitly stated his intent to join Wurz as a Defendant in this case in his reply brief on the motion to remand and at the August 8, 2023 hearing on Plaintiff's first motion to remand. (*See* ECF No. 36 at 17; 8/9/2023 Order at 7 (ECF No. 39).) Plaintiff filed his Second Amended Complaint on September 11, 2023, and formally pled claims against Wurz. (ECF No. 43.) Other courts have found cases with an analogous procedural posture to weigh in favor of joinder. *See Lara*, 2013 WL 1155523, at *3 (request to amend made five months after the initial complaint was filed and three months after removal supports § 1447(e) joinder);

Plaintiff's knowledge of Wurz's participation in the events giving rise to this case, however, cuts against Plaintiff's contention that the early posture of this case weighs *wholly* in his favor. *See Baker*, 2022 WL 3142065, at *5. Plaintiff first filed a case in state court against Wurz before he filed this second lawsuit. Wurz was also repeatedly referenced in the original and first amended complaints. (*See* Chase Not. Removal at 10-42 (Compl.) and 104-139 (First Amended Complaint).) As noted in Section II.C.5. below, Plaintiff appears to have intended to request consolidation of the two cases in state court. (ECF No. 55 at 34.) While this does not wholly absolve Plaintiff's failure to simply amend his complaint in the first state court case to add Bear Stearns, Bayview, and the other Defendants, it explains the delay in seeking to join Wurz. *See Lara*, 2013 WL 1155523, at *3 (noting consideration of delay should include whether it was "unexplained"). Given these facts, Plaintiff's delay in seeking to join Wurz does not weigh against joinder because of the early procedural posture of this case.

5. Wurz is not being joined solely to defeat federal jurisdiction.

Under the motive for joinder factor, courts consider "whether joinder is intended solely to defeat federal jurisdiction." *IBC Aviation*, 125 F. Supp. 2d at 1011 (emphasis

added). "There is no clear standard for determining whether a plaintiff has improper

motives in seeking to add a party that will force the court to remand the case, but

unjustified delay in filing a motion to amend is a reason to suspect the plaintiff wishes to

defeat federal jurisdiction." *Baker*, 2022 WL 3142065, at *4 (*citing Bakshi v. Bayer

*Healthcare, LLC*, 2007 WL 1232049, at *5 (N.D. Cal. Apr. 26, 2007) ("Because [p]laintiff

has no valid reason for failing to include [proposed defendant] in his original complaint,

the [c]ourt finds that the primary reason for seeking to add [proposed defendant] now is

to destroy [] diversity jurisdiction.")). Courts routinely exercise their discretion to deny

joinder when it appears that the plaintiff's sole motivation for joining a non-diverse

defendant is to defeat diversity jurisdiction and avoid resolution of the case in federal

court." *Id.*; *citing Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1376 (9th Cir.

1980) (concluding that district courts "should look with particular care at such motive in

removal cases," when the new defendant would destroy diversity and require remand").

Courts also consider the plaintiff's explanation for the delay, as well as the connection

between this factor and the validity of the claims factor. *Baker*, 2022 WL 3142065, at *6.

Here, Plaintiff was aware of Chase's removal when he stated his intent to add

Wurz as a Defendant. *See Clinco*, 41 F. Supp. 2d at 1083 (noting, for purposes of

motive, that courts have considered whether the plaintiff was "aware of the removal" at

the time of amendment). The SAC is substantially similar to the previous complaints, and

at first glance it is unclear why Plaintiff did not just amend his complaint in the state court

action against Wurz to add the Chase Defendants, Bayview, and the other Defendants.

If the inquiry ended here, this factor would weigh against allowing joinder of Wurz. *See*

*Baker*, 2022 WL 3142065, at *6 (noting "courts have inferred an improper motive where

the plaintiff's proposed amended complaint contained only minor or insignificant changes

to the original complaint").

Plaintiff asserts that he is acting in good faith in now seeking to join Wurz. (ECF

No. 55.) In doing so, Plaintiff notes the interrelated nature of his claims against Wurz and

those against Bayview, asserting Wurz's "acts and omissions are relevant to this matter,

and all the claims come from the same nucleus of facts." (*Id.* at 22.) More persuasively,

Plaintiff explained that he intended to have the two cases he filed in state court

consolidated at the first available opportunity. (*Id.* at 33-34.) Plaintiff's conduct in state

court supports this assertion, as he emailed a copy of the Wurz Complaint to Nationstar

just three days after filing his case against her, asserting that the Wurz case was related

to Nationstar's interests in the mortgage. (*Id.* at 33.) A week later, Plaintiff filed this

second case against Bayview and Community Loan Servicing, et al. (*See* Chase Not.

Removal at 10-42.) On February 23, Counsel for Nationstar emailed Plaintiff to note their

entry of appearance in this case. (*Id.*) Plaintiff responded by email, reasserting the

details of his "related" case against Wurz. (*Id.*) Critically, on February 24, 2023, Plaintiff

and Defendant Community's and Nationstar's counsel spoke on the phone, and Plaintiff

states the following exchange occurred:

> [Counsel] asked me if the two related cases had been
> consolidated. I informed [him] the cases had not yet been
> consolidated but that the assigned Judges would likely make
> that determination during the initial hearing dates which
> were scheduled for July 31, 2023, and August 14, 2023, in the
> Stockton Courthouse.

(*Id.* at 34.) However, before these hearings occurred, this case was removed to this

federal court. (*See* Chase Not. Removal at 1.) These facts support Plaintiff's arguments

that he is not attempting to join Wurz <u>solely</u> to defeat diversity. *See Baker*, 2022 WL

3142065, at *6 (noting the relevance of the plaintiff's explanation as to why a delay

existed in joining the non-diverse defendant, and noting how a plaintiff's motive can be

"intertwined' with the validity of the proposed claims); *see also Nielson v. Armstrong

Consultants*, 2011 WL 13228456, at *9 (D. Ariz. May 18, 2011) (finding the plaintiff's

motivation to join non-diverse defendants to be reasonable and just where the plaintiff

had not been able to move for consolidation of a related state court action before the

diverse defendants removed to federal court); *Wiseman v Burlington Northern Santa Fe

Ry Co*, 2007 WL 2712979, at *1 (W.D. Wash. Sept. 14, 2007) (finding proper the joinder

of a non-diverse defendant under § 1447(e) where the plaintiff's conduct in the removed

1  case and other pending cases in state court supported the plaintiff's stated intent to

2  consolidate these cases upon remand).

3        Given Plaintiff's explanation and facts corroborating his intent to consolidate the

4  two actions in state court, as well as the intertwined nature of Plaintiff's motive with the

5  validity of the civil conspiracy claim against Wurz, this factor weighs in favor of permitting

6  joinder of Wurz.

7                    6.      The prejudice factor weighs in favor of joinder.

8        Finally, the last factor courts consider is the prejudicial effect of a non-diverse

9  party's joinder. In analyzing prejudice, courts examine the other § 1447(e) factors in

10 addition to the risk of parallel litigation in federal and state court; the plaintiff's ability to

11 obtain complete relief; the parties' choice of forum; and the procedural posture of the

12 case. *See Baker*, 2022 WL 3142065, at *7; *Sabag*, 2016 WL 6581154, at *6; *IBC

13 Aviation*, 125 F. Supp. 2d at 1013; *Murphy*, 74 F. Supp. 3d at 1286; s*ee also Encino

14 Petroleum*, 2012 WL 1289850, at *2 (noting no prejudice in remanding where the case

15 was procedurally still in its early stages). Some courts focus solely on the prejudice

16 suffered by the plaintiff if joinder is denied. *IBC Aviation*, 125 F. Supp. 2d at 1011;

17 *Sabag*, 2016 WL 6581154, at *4. Other courts balance this prejudice against that

18 suffered by the defendants if joinder is permitted. *Murphy*, 74 F. Supp. 3d at 1278

19 (noting the prejudice prong concerns "any of the parties in the litigation"); *Baker*, 2022

20 WL 3142065, at *7.

21       Here, the Court finds that overall, the prejudice factor weighs in favor of permitting

22 joinder. First, given the interrelated nature of civil conspiracy claims to other torts,

23 requiring Plaintiff to proceed with parallel litigation in state court against Wurz, and in

24 federal court against Bayview, the alleged co-conspirator, and other defendants, is

25 untenable. Because civil conspiracy examines the acts of alleged co-conspirators and

26 because the negligent misrepresentation claim against Bayview is the alleged tort

27 committed in furtherance of the conspiracy, it is crucial that the civil conspiracy claim

28 against Wurz and the negligent misrepresentation claim against Bayview proceed

together. *See Applied Equip.*, 7 Cal. 4th at 511. The risk of inconsistent results and the cases proceeding on different timelines prejudices both Plaintiff and Defendants. Allowing a separate parallel federal action to proceed would also force the parties to duplicate discovery on several subjects, including, for example, Wurz's and Bayview's conduct in September 2019 when Bayview stopped accepting Plaintiff's mortgage payments; Plaintiff's prior mortgage payments and Bayview's acceptance of those payments; whether Community Loan Servicing accepted Plaintiff's January 2022 $67,700 payment by cashier's check, etc. The parties would also benefit from having Plaintiff's claims heard together in the same forum, including potential apportionment of damages. *See Applied Equip.*, 7 Cal. 4th at 511.

Second, as described above, not permitting joinder will impact Plaintiff's ability to obtain complete relief. Third, the Court is persuaded that Plaintiff ultimately intended for the two cases to be heard together in the same state court forum. (*See* Section II.C.5 above.) Denial of joinder would elevate a pro se plaintiff's procedural missteps over substance, such as filing a second lawsuit instead of amending the first lawsuit—a principle long discouraged in this Circuit. *See Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (reminding pro se parties are to be treated with "great leniency" with procedural missteps).  Fourth, the federal case is in an early procedural posture where not all Defendants have responded to the SAC, which minimizes potential prejudice from permitting joinder.

That is not to say this factor swings wholly in Plaintiff's favor. Though the Court has avoiding commenting on other claims asserted in the SAC, it is clear some of Plaintiff's claims are not facially viable, and remand delays resolution of these claims— and in some instances, potentially delays resolution of the entire case for some Defendants. The Court is sensitive to this. However, without subject matter jurisdiction, the Court has no power to rule on these claims. *See Crippen v. Int'l Paper Co.*, 2024 WL 1181367, at *12 (E.D. Cal. Mar. 19, 2024) (denying pending motion to dismiss as moot where joinder of non-diverse party destroyed diversity jurisdiction). Thus, the prejudice

factor tips in favor of joining Wurz and remanding to state court.

### 7. Conclusion – 1447(e) Factors

In conclusion, the Court finds that after weighing the 1447(e) factors, joinder of Wurz should be permitted. In summary:  the first (facial validity of claims), second (necessary party), fourth (delay), fifth (motive), and sixth (prejudice) factors all weigh in favor of permitting joinder. The third factor (statute of limitations) weighs against permitting joinder. Given this, the Court is persuaded that Wurz is properly joined as a Defendant in the SAC.

The federal court's subject matter jurisdiction in this case was based on diversity of citizenship between the parties. Because it is undisputed that Wurz's citizenship is not diverse from Plaintiff, the joinder of Wurz as a Defendant destroys diversity between the parties. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) ("Section 1332 requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants."). The Court therefore does not have subject matter jurisdiction, and this case must be remanded to state court. *DeMartini v. DeMartini*, 964 F.3d 813, 821 (9th Cir. 2020) (reminding that, "[b]y definition, diversity confers subject-matter jurisdiction and so the addition of a diversity-destroying defendant would 'destroy subject matter jurisdiction' in this case") (citing 28 U.S.C. § 1447(e); 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

### D. Motions to Dismiss

As the Court finds remand is necessary because the Court lacks subject matter jurisdiction where diversity jurisdiction is destroyed, the pending motions to dismiss from Defendants Chase, Trustee Corps, and Quality Loan are denied without prejudice, subject to refiling in state court. *See Crippen*, 2024 WL 1181367 at *12.

### **ORDER**

Based upon the findings above, the Court ORDERS:

1.      Plaintiff's motion to remand (ECF No. 44) is GRANTED, and this case is

REMANDED to state court;

2.       Defendants' motions to dismiss (ECF Nos. 50, 52, 73) are DENIED WITHOUT
         PREJUDICE; and

3.       The Clerk of the Court is directed to CLOSE this case.

Dated:  June 11, 2024

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

3, lewi.1010